## COMMONWEALTH vs. MARGARET HUGHES.

Bristol.    October 28, 1895. — November 29, 1895.

Present: FIELD, C. J., KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Intoxicating Liquors — Evidence — Question for Jury.*

If, at the trial of a complaint for keeping a tenement used for the illegal sale and illegal keeping of intoxicating liquors with intent to sell the same, there is evidence that the defendant had been seen about the premises from the day when he testified that he had sold out to another to the day which closed the period covered by the complaint, acting as he had done before the alleged sale, it is a question for the jury whether the sale was a pretence or whether he still owned and kept the place.

If, at the trial of a complaint for keeping a tenement used for the illegal sale and illegal keeping of intoxicating liquors with intent to sell the same, it does not appear whether the defendant was or was not present when two men came to the door with liquor and bottles of beer, it is for the jury to say from the description of what took place whether the manner in which the men came showed that they were accustomed to come there and deliver liquor and beer; and if they were so accustomed, that fact would have some tendency to prove that the place was kept for the illegal sale of intoxicating liquors.

At the trial of a complaint for keeping a tenement used for the illegal sale and illegal keeping of intoxicating liquors with intent to sell the same, evidence that a fortnight before the trial, which was about a month after the period covered by the complaint, a person to whom the defendant asserted that the entire stock in trade had been sold on the day which was the first day of the period covered by the complaint, directed an officer to arrest the defendant for attempting to take away a sewing-machine, which the purchaser claimed was a part of the stock in trade, has no legitimate tendency to prove that the sale was not a pretence, or that the defendant did not keep the place during the period covered by the complaint.

COMPLAINT, for keeping a tenement in Fall River, used for the illegal sale and illegal keeping for sale of intoxicating liquors, from December 12 to December 31, 1894. At the trial in the Superior Court, in February, 1895, before *Sheldon, J.*, the defendant requested the judge to instruct the jury to return a verdict of not guilty. The judge refused so to do, the jury returned a verdict of guilty, and the defendant alleged exceptions, in substance as follows.

The government offered evidence tending to show that, on the morning of December 30, a squad of police officers went to the premises and the door was opened by the defendant and they

entered the kitchen; that they found a man seated near the stove in the kitchen drinking from a tea-cup, which he put down on the table empty, and which smelled of whiskey; that the defendant was present; that they found in the pantry a tea-pot containing a quart or more of whiskey, a pint milk-can containing a small quantity of gin and a thick-bottomed liquor glass full of whiskey; that there were a variety store, two sleeping-rooms, and closet adjoining the kitchen; that while the officers and the defendant were in the kitchen two little girls came in to purchase whiskey, and the officers sent them away; that still later two men came to the door and knocked, one of them having a two-gallon jug filled with liquor, and the other a rack filled with bottles of lager beer; and that when the officers went to the door the men started to go away, but that the officers took the liquor and the rack filled with bottles, and brought them into the kitchen. All of this evidence was admitted, against the defendant's objection and exception.

There was also evidence tending to prove that the defendant had been seen about the premises during the whole time named in the complaint, apparently doing the same things and acting the same in relation to the premises as she had done prior to December 11, 1894. There was also evidence that the defendant said to one of the officers, " The place does n't belong to me, I have sold out to Henry."

The defendant testified that she was the proprietress of the tenement described in the complaint until December 11, when she sold all the stock in trade, all the fixtures, and all the household goods on the premises to Henry Donahoe; that she continued to remain about the premises until the 1st of January, giving as a reason for doing so that she desired to collect some money that was due her from former customers; and that during the time from the sale until she left the place she did some work about the premises, and helped to wait on customers in the store occasionally. The defendant called Donahoe as a witness, who testified that he bought the stock in trade, fixtures, and household effects on the premises, on December 11, and produced a bill of sale of that date from the defendant to him; that he paid part of the purchase money at the time the bill of sale was executed, and that since that time he had been

in complete control and possession of the premises; that the defendant remained upon the premises for her own convenience in order that she might make some collections, and that she sometimes helped about the premises, but no longer had any interest in the business conducted there or the property contained in the store or tenement. He also testified that he had been living with the defendant for several years, and that he had worked for her on these premises, and for no one else, since April, 1894. On cross-examination he was asked if the evidence which he had just given was not given for the purpose of protecting the defendant against a second conviction, and also if the bill of sale was not a sham made for the purpose of deceiving and enabling the defendant under cover of it to carry on the business. The witness answered, "No." Counsel for the defendant then asked the counsel for the government if he contended that there was collusion between the witness and the defendant, and that the bill of sale was a sham and a cover, and that the witness was endeavoring to protect the defendant against a second conviction; and counsel for the government said that he did. Thereupon on re-direct examination the defendant's counsel asked the witness if he had not some two weeks before the trial sent for a policeman to come to the store to arrest the defendant, who was at the time attempting to take from the premises a sewing-machine which she said belonged to her, but which the witness said was sold and delivered to him on December 11. The judge excluded the question, and said that the defendant might ask the witness what the relations between him and the defendant were at the present time. To the exclusion of this question the defendant excepted. The defendant's counsel, since the government contended that the witness was in collusion with the defendant, endeavoring to protect her as above stated, offered to prove that about two weeks previous to the trial the witness sent for an officer to come to the premises; that he came and was directed by the witness to arrest the defendant for attempting to take a sewing-machine, which she claimed belonged to her, but which the defendant claimed was transferred to him with the other articles of personal property by the bill of sale, and that this offer to prove was made solely for the purpose of meeting the claim of the government,

that there was collusion as above stated. The judge refused to accept the evidence, but stated that he would allow the defendant to ask the witness what were the relations existing between the witness and the defendant at the present time.

*J. W. Cummings*, for the defendant.

*A. J. Jennings*, District Attorney, for the Commonwealth.

MORTON, J. The defendant concedes that there was evidence that at the time of the search the premises were used for the illegal purpose alleged in the complaint.

There was evidence that the defendant had been seen about the premises from December 11, the day when she testified that she sold out to Donahoe, to December 31, the period covered by the complaint, doing the same things and acting as she had done before December 11; and it was a question of fact for the jury whether the sale to Donahoe was a pretence, or whether she still owned and kept the place.

While the exceptions do not state that the defendant was present when the two men came to the door with the liquor and the beer, they do not state that she was not. It was for the jury to say from the description of what took place whether the manner in which the men came showed that they were accustomed to come there and deliver liquor and beer. If they were accustomed to deliver liquor there, that fact would have some tendency to prove that the place was kept for the illegal sale of intoxicating liquors.

Evidence of what took place between the defendant and Donahoe a fortnight before the trial, in February, 1895, in reference to the sewing-machine, would have had no legitimate tendency to prove that the sale to Donahoe was not a pretence, or that the defendant did not keep the place from December 11 to December 31.

*Exceptions overruled.*